HOLMES ET AL., APPELLANTS, *v.* THE UNION BANK OF COMMERCE CO. ET AL., APPELLEES.

(No. 20300—Decided June 19, 1946.)

*Messrs. Simmons, DeWitt & Vilas* and *Mr. J. Albert Lowell,* for appellants.

*Mr. Hugh S. Jenkins,* attorney general, and *Mr. Harold O. Ziegler,* for appellee Superintendent of Banks.

*Mr. Harold O. Ziegler* and *Mr. Oliver Stamper,* for appellee Union Properties, Inc.

*Messrs. Andrews, Hadden & Putnam, Mr. John B. Putnam* and *Mr. Edwin A. Howe,* for appellee The Union Bank of Commerce Company.

BY THE COURT. This is an appeal on questions of law and fact from a judgment of the Common Pleas Court. It was presented in this court on the record made in the Common Pleas Court.

Under authority conferred by Section 710-89, General Code, the Superintendent of Banks took posses-

sion of the assets of The Union Trust Company of Cleveland on June 15, 1933, and at once filed with the clerk of the Court of Common Pleas of Cuyahoga county a notice in accordance with Section 710-90, General Code, thereby commencing an original action for the liquidation of that trust company. Thereafter, the superintendent filed an action against the stockholders of the trust company to assess their double liability, as a result of which a large sum was collected.

The Union Trust Company was the largest bank in Ohio. Its liquidation was an enormous task. After it had been in progress for more than four years, during a period of economic depression from which there had been little, if any, relief, a "Plan for Reorganizing the Affairs of The Union Trust Company" was formulated in September of 1937. This plan was filed in the liquidation action, together with an application by the Superintendent of Banks for an order approving it and authorizing him to carry it into effect. The court fixed February 19, 1938, as the date for hearing the application and ordered notice to be given by publication, in compliance with Section 710-95, General Code, and also by registered mail, enclosing a copy of the plan.

Before the date of hearing, objections were filed by several interested persons. After a full hearing of the application and the objections of one stockholder, the court approved the plan and authorized and directed the superintendent to carry it into effect, which he did by making the transfers of the property on April 11, 1938.

No action challenging this order was filed within five days, or request for leave to file such an action was made within that time by any of the plaintiffs in this action.

There is no doubt that the formulation and approval of this plan was the result of months of deliberation and that it was accompanied by the widest publicity and that all creditors and stockholders had notice of the terms of the plan and of the court's hearing on the application for its approval.

Thereafter, certain depositors filed actions to enjoin the superintendent from carrying the plan into effect. These actions were decided in favor of the superintendent and the judgments were affirmed by the Court of Appeals. It was not until June 8, 1943, that this action was filed by the plaintiffs, stockholders, challenging the validity of the plan, the power of the superintendent, the jurisdiction of the court and its order approving the plan and seeking an accounting, a money judgment, and an injunction.

A reading of the plan shows that it presented an alternative to stockholders. If they consented to the plan and joined in its execution, they acquired certain rights. If they did not consent they had, and still have, certain rights. These plaintiffs elected not to consent. In retrospect, it may seem that the part of wisdom would have dictated an election to join, but that conclusion can be reached only by a disregard of that depressed economic condition that existed in 1937 and the inflationary economy of 1943 produced by World War II. At any rate, the plan deprived the plaintiffs of no vested right, but preserved to them what the court found to be their rights in the assets of the trust company.

The voluminous briefs and extensive oral arguments offer a temptation to discuss the various contentions in detail—but it would serve no useful purpose. We find as did the Common Pleas Court that the disposition of the assets in accordance with the plan approved by the court was authorized by Section 710-95, General

Code. We are of the opinion that the approving order is binding upon all those who failed to challenge it within five days and that, as in those cases in which it was challenged within that time, the plan was approved and it became binding upon all. We are also of the opinion that a litigant who has delayed for five years the assertion of a right while innocent persons have acquired rights and positions have been changed, to rescind which would result in almost inextricable confusion, is in no position to ask for equitable relief. *Russell, Admr.,* v. *Fourth Natl. Bank,* 102 Ohio St., 248, 131 N. E., 726.

We approve the reasoning contained in Judge McNamee's memorandum to lawyers in this case, and we reach the same conclusion in favor of the defendants.

A decree similar to the one entered in the Common Pleas Court may be entered in this court.

*Decree accordingly.*

HILDEBRANT, P. J., MATTHEWS and Ross, JJ., concur in the opinion and judgment.

HILDEBRANT, P. J., MATTHEWS and Ross, JJ., of the First Appellate District, sitting by designation in the Eighth Appellate District.